Thank you, Counsel. So, Mr. Brenner, you're here for the appellate, and Mr. Schnack for the appellate. As you see, Counsel, a third member of this panel, Judge Turner, is not present for the oral argument, but he will be part of the panel and he will be listening to these oral arguments and he will be part of the decision-making process. So, with that, Mr. Brenner, you may proceed. Thank you, Counselor. It pleases the Court, Counselor Schnack. As the Court noted, I am Tad Brenner. I'm representing the appellant, Eric Schreacke. This is a case involving child custody, and the focal point of this case is whether the child court impermissibly permitted the reports of DCFS to be considered as substantive evidence. We believe that the trial court impermissibly considered these reports, and as a result, that initial error was the genesis of several other errors. The case was a little bit unusual in that trials started on August 15th of 2014. At the conclusion of that day of trial, there was a nine-month recess, so to speak, and the trial resumed again on May 12th of 2015. A number of things happened between those two dates and during that nine-month period. Initially, the trial court indicated that it was going to look at the reports of DCFS in camera, but it seems as though the court orders changed over a series of time, and by the time we got to May 12th, the court announced that it was going to consider those reports as substantive evidence. Trial counsel for Erica objected at that time, and actually objected in the absence of any reference to the reports. Trial counsel additionally filed a motion in limine addressing the issue of the DCFS reports, but when the May hearing came around and trial counsel attempted to argue that point, he was told they're coming into evidence. We believe that that was impermissible. The trial court took the position that there was a stipulation that these reports could come into evidence. The law is pretty clear that a stipulation has to be clear, precise, definite. We don't have anything on the record where either trial counsel for either of the parties made a stipulation regarding the use of DCFS reports. What we have are various statements from the trial court itself, but the record is really devoid of anything where Erica's counsel said, yes, these reports can be considered as substantive evidence. Do we have a record before us of the remarks of counsel at the hearing at which trial court stated that this constitute a stipulation? Is the court referring to the May hearing? No. I'm referring to the earlier hearing. The August hearing? Well, there is really not too much about the use of the reports in the August hearing itself. There are some statements that the court is going to take a look at them to get to the bottom of who was making these reports on DCFS. But in terms of any use beyond that for substantive evidence, there really isn't much in the record that I was able to locate. Do we have a transcript of that hearing? Yes. And what was discussed there? Essentially the court was concerned that there were reports made to DCFS and the court wanted to find the source of the reports, who the reporter actually was. That is my read of the transcript and how things went down in August of 2014. Now, in terms of any type of stipulation, we believe that even if there were a stipulation that the court could consider these reports as substantive evidence, that stipulation would not be valid for a number of different reasons. There are a number of cases throughout the state that say custody is de novo. It has to be based on live testimony. A DCFS report is inherently not live testimony. And the cases all have something uniquely in common. They involve prior court proceedings. Prior court proceedings. They are subject to cross-examination. What a DCFS report is, is essentially a narrative report from a DCFS worker who goes out and talks to people and reports what those people have said to the DCFS. Counsel, it's a shocking argument that the lawyers can't stipulate to evidence in a contested proceeding for the trial judge to consider. I mean, I, you know, I mean, you can even think about criminal cases where, as a matter of public policy, I don't recall any situation where evidence that the parties stipulated to the court that the court could not consider. That this is somehow against the law, that it's an unlawful thing for the parties to do and for the court to consider. That's essentially the argument, isn't it? Well, Your Honor, first we believe there wasn't a stipulation. Well, that's not my point. But your argument is, assuming that the trial, the trial court said there was one. But you're saying that as a matter of law, if the parties stipulated to a piece of evidence, that the trial court can't accept that stipulation. Is that your position? Well, Your Honor, under the Abused and Neglected Child Reporting Act... Counsel, that I think calls for a yes or no answer. Your Honor, I believe that the statute prevents parties from stipulating. So your position is, the answer to my question is yes? Yes, I agree. Is there any other example in Illinois jurisprudence where the attorneys in a contested legal matter can't stipulate to any evidence for the trial court or the trial effects consideration? None that I'm aware of. Just this one? Yes. And not in criminal cases? I know you have some criminal practice. Can you think of any in a criminal case where that couldn't be done? I cannot think of any in a criminal case. But in this one instance, as a matter of violation of public policy? Yes, I believe so, because of the statute involved. The legislature has taken a very strict position in terms of protecting these records. DCFS vigorously defends its records and defends its workers against subpoena for unindicated findings, things of that nature. What we have here is a statute, or yes, an entire act, which is designed to protect these records from any type of dissemination. In terms of the stipulation itself, or what the court viewed as a stipulation, trial counsel, Mr. Larson, filed a motion saying, look at the statute. We cannot do this. He attempted to argue in the May hearing that this cannot be done. He was shut down pretty quickly, but he did at least make his point. Now, the court most certainly considered these reports in terms of its oral decision, which goes on roughly 14 pages. The majority of the trial court's decision focuses on the report, and it's not merely who made the report or how the report was made. It is the underlying substance of what was said by various individuals who were not ever witnesses in the case. So I believe that under the circumstances, the court made a serious error by allowing these reports into evidence. The second point that I would like to make is the trial court reversed its decision for an evaluation under Section 604.5. In the May hearing, the guardian ad litem announced in court that he needed help. He needed professional help in terms of making a recommendation to the court. The guardian ad litem did something which I find to be personally extraordinary. He offered to pay for the report himself just to get it done. Both parties apparently agreed that a report was appropriate, ordered the report. After receiving the DCFS reports, the trial court changed its ruling without a motion in sua sponte and said, no, I am not going to have an evaluation done. Now, I believe that the trial court committed error by reversing its earlier decision, and the reason why it reversed its earlier decision is very, very clear. It's because the court had received the reports and determined from those reports that it didn't need an evaluation anymore. There was no motion pending, no request by anyone had a report not be made. Ultimately, where I think the final argument is, is that the trial court abused discretion by changing the custody of these children. The facts that we have is that the children had expressed to two independent witnesses a strong preference for the mother. Second, these children were doing very, very well. They were well adjusted, they were doing well in school, there was nothing wrong with the children per se. Third, we do know that the father had an indicated report by DCFS for causing a concussion to one of the girls. What we have on the other hand was some evidence presented regarding some problems with visitation. We had evidence that these folks tended to glare at one another in public places and obviously didn't like one another very much. But the bottom line is the children were still doing well. Under those circumstances, and based on the other two points which I've made, I believe that it was error for the trial court to change custody. Another point which I think is significant is between the August hearing and the May hearing, there were, I believe, 14 different motions filed by the two parties alleging everything from requests for new mental health evaluations, which Mr. Stock filed, to complaints regarding a lack of telephone contact with the children, the father taking away the telephone. All of these issues could, would, and should have had a bearing on the final ruling of the trial court, but the court never heard any of those motions. What the trial court did was made a comment, well those are for the next judge who takes over after May. So under the totality of the circumstances, I believe that the court should reverse the decision of the trial court and remand this. I believe we have serious error with the DCFS reports. I believe we have another subsequent serious error involving the retraction of the 604.5 evaluation, and ultimately I think the decision was against the manifest weight of the evidence. I would like to reserve the remaining time which I have for rebuttal. So thank you. Thank you. May it please the court and counsel. I couldn't disagree more. I know that's a surprise to you. But in looking at this case, I would ask that you keep in mind a couple of, I think, very important points. The first point is that the judge that heard this case was a very experienced family law judge. And this judge heard this case from beginning to end. He heard every motion, he observed every witness, he considered every exhibit, and he listened to every argument. This wasn't a situation where he walked in and caught the last third or last half or last part of ongoing litigation. This litigation went on for over five years. It was a legend in Adams County. It is a ridiculous amount of litigation. But that is what happens when adults can't act like adults. But the fact of the matter is, I think under the law and certainly at our request that you give great deference to the decisions and the actions of this trial judge because of, first, his ability and experience, but second, the fact that he was there from the get-go and he had an opportunity to see everything. As far as the issue or the question of law raised by counsel, in his reply brief on page four, paragraph one, on August 22nd, access to the records will be limited to an in-camera inspection by the court only. That was the judge's statement in front of myself and trial counsel. That was not objected to. It was agreed to. I don't know why a judge would take the time to review, I believe, 130 to 170 pages of DCFS reports if he wasn't going to consider them. It certainly wasn't being done for light reading purposes. The other thing that I think is important to remember when you consider this case is the DCFS reports and their contents were only a minor portion of the case that we presented to the court in asking for a change of custody. And as such, certainly needed to be considered and certainly were considered because of the stipulation because that was in August. We took the time, as Mr. Brunner points out, nine months for the court to get those records, to give DCFS an opportunity to object to those records, to have her counsel or myself object to those records or the use of those records. And then after they were received and considered to make further objections or to present evidence to rebut those records. Absolutely none of that was done. Nothing was done. I find it a unique argument that a court can have too much evidence, especially in a child's custody case, but that appears to be what counsel is saying. But the long and the short of it is my suggestion to the court that when a judge tells you he's going to look at records and you don't object to it, you've agreed to it, and if you think he's wrong, you better tell him then and now. Or when you have another date in February to do it and an order is entered and you don't object to it or you don't ask for a motion to reconsider. And when you're given an opportunity to rebut those records or to supplement those records or present additional evidence and you don't do that, at some point in time those records are going to come home to roost whether they're good or bad. But what is there is there. This judge wanted to get to the bottom, hopefully once and for all, of a very bad situation. He took it upon himself to get those records and read it. And I applaud him for that. I don't, and I would hope you wouldn't castigate him for that. As far as the decision itself is concerned, we've cited to the court the point here. All you have to do is change the names. Erica had a comprehensive scheme to deny Sean any type of relationship with his children. That was the case that I had attempted to present to the court for years. We dealt with bug bites. We dealt with improper hair combing. We dealt with interrupted summer vacations. We dealt with outbursts in court. We dealt with a ridiculous petition to remove the children to the state of Oklahoma where she met an Internet boyfriend. We had police involvement. We had DCFS involvement. We had a disruption at the guardian ad litem's office. We had teachers and administrators involved. Virtually all of them found for or in favor of my client. The only thing that Mr. Brenner can cite to the court is the third or fourth DCFS investigation where his client became unhappy with the Quincy office who made it unfounded. They ran to Jacksonville. Jacksonville made it founded and did absolutely nothing. Perhaps the be all and the end all of this case is the fact that my client, when he went to Jacksonville, his own children for visitation couldn't go into her driveway or her father's driveway. So if it was raining or snowing, these young kids had to go into the street to get into the car. That's just crazy. But that's the position that she took. This judge repeatedly told her there's nothing funny about this. She'd sit in court and laugh. This is serious. You need to take it serious or at some point in time you're going to lose custody of your children. He warned her time and time again and now she's surprised that it happened? You can't, you know, she put herself and her animosity towards her husband over the well-being of her children by that very simple act. Let the guy pull in the driveway and pick up his kids. But not in Shrek versus Shrek. The long and the short of it is I submit to the court that this is the manifest way to the evidence. For this court to rule any differently it would have to ignore the evidence. Please don't change this decision. Thank you. Thank you, counsel. Mr. Brenner? A couple points that I'd like to address from Mr. Stock's argument. Number one, in terms of the reports from DCFS, we have to look at the initial purpose for the court seeking them. The court was looking at those reports solely to find out who made them. And it went from an in-camera review to consideration as substantive evidence. That is our problem with the issue. The next point is Mr. Stock says the use of these reports was only a minor part of the court's decision. Well, based on Judge Drummond's oral ruling, it was a pretty major part of the decision. Mr. Stock made several comments about things that had happened in the record of this case. But most of those things were not part of the August or the May hearing. They transpired much before. Now, whether the trial court can consider those, maybe. But the record itself is that in terms of this petition to change custody, which was tried in August of 2014 and May of 2015, many of those things did not come up. We believe that there are some serious issues with the way this decision came about, and we would be asking this court to remand the case for a new hearing. Thank you. Thank you, counsel. The court will take this matter under advisement and be in recess for a few moments.